UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO M. GONZALEZ,<br><br>        Petitioner,<br><br>    v.<br><br>J. BROWN, Warden,<br><br>        Respondent. | 1:03-CV-6360 LJO HC<br><br>ORDER DENYING PETITION FOR WRIT<br>OF HABEAS CORPUS<br><br>ORDER DIRECTING CLERK OF COURT<br>TO ENTER JUDGMENT |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties having voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), by order dated February 19, 2004, this case was assigned to the Magistrate Judge for all purposes, including entry of final judgment. Due to the death of Magistrate Judge Hollis G. Best and the appointment of Magistrate Judge William M. Wunderlich, the case was reassigned to the undersigned for all further proceedings.

**PROCEDURAL HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on March 27, 2000, of one count of possession of cocaine for sale (Cal. Health & Safety Code

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer to the petition, and Petitioner's traverse to Respondent's answer.

1 § 11351, one count of possession of cocaine base for sale (Cal. Health & Safety Code § 11351), one
2 count of transportation of cocaine (Cal. Health & Safety Code § 11352(a)), one count of
3 transportation of cocaine base (Cal. Health & Safety Code § 11352(a)), one count of giving false
4 information to a police officer (Cal. Penal Code § 148.9), and one count of driving without a license
5 (Cal. Vehicle Code § 12500(a)). See Exhibit A, Answer to Petition for Writ of Habeas Corpus
6 (hereinafter "Answer"). In a bifurcated proceeding, the court found true the allegations that
7 Petitioner had suffered two prior narcotics convictions and one prior strike conviction, and had
8 served two prior prison terms. Id. The court denied Petitioner's request to strike the prior strike
9 conviction. On April 25, 2000, Petitioner was sentenced to a determinate term of 16 years. Id.

10    Thereafter, Petitioner filed a notice of appeal with the California Court of Appeal, Fifth
11 Appellate District (hereinafter "5th DCA"). On May 1, 2002, the 5th DCA issued an unpublished
12 opinion affirming the judgment. See Exhibit C, Answer.

13    Petitioner then filed a petition for review in the California Supreme Court. See Exhibit D,
14 Answer. On July 17, 2002, the petition was summarily denied. See Exhibit E, Answer.

15    On September 29, 2003, Petitioner filed a federal habeas petition in the United States District
16 Court for the Eastern District of California, Sacramento Division. By order of the Court dated
17 October 3, 2003, the matter was transferred to the Fresno Division. The petition raises the following
18 two claims: 1) "The destruction of exculpatory evidence was a violation of petitioner [sic]
19 constitutional rights to Due Process and Fundamental Fairness under the United States Constitution";
20 and 2) "The Trials [sic] jury instruction on CALJIC 17.41.1, creates an improper chilling effect on
21 juror deliberations by allowing unaceptable [sic] judicial involvement which assists the majority
22 jurors in imposing their will upon the minority, impermissibly infringes on the power of jury
23 nullification, and denies the petitioner the rights to juror unanimity and a fair trial by jury."

24    On February 27, 2004, Respondent filed an answer to the petition.
25    On March 18, 2004, Petitioner filed a traverse.
26 ///
27 ///
28 ///

**FACTUAL BACKGROUND**

The Court hereby adopts the facts as summarized by the 5th DCA in its opinion dated May 1, 2002:

On March 8, 1999, Fresno Police Officer Richard Tucker stopped defendant for driving with a bald, right front tire. Jaime C., a juvenile, was also seated in the front passenger seat of defendant's car. When Tucker asked defendant for his driver's license, defendant said he did not have one. Later, defendant told Tucker that his name was Theodore Manzo and that his birthday was March 19, 1977. Defendant's police files revealed his real name was Ernesto Medina Gonzalez, and his birthday was March 19, 1974.

Tucker testified that defendant was extremely nervous and fidgety when he directed him to step out of the car. He decided to arrest defendant for driving without a license. While doing so, Tucker found a bundle of cash totaling $1,205 in defendant's right rear pocket, and an electronic pager attached to the waistband of his pants. Tucker also observed a cellular telephone in the center console of defendant's car.

Fresno Police Officer Christine Santellano ("C. Santellano") was in the same parking lot when Tucker stopped defendant and came over to assist in the arrest. Tucker told C. Santellano that he found a large amount of money in defendant's pocket and asked her to remove Jaime C. from the car and search him for weapons.

According to C. Santellano, as she was conducting a pat-down search for weapons, Jaime C. pulled away when she reached his right hip area. C. Santellano looked down to see why he pulled away. Because Jaime C. was wearing "really baggy" pants, C. Santellano could see directly into his pocket, where she observed a clear plastic baggie with a white substance in it. C. Santellano removed the baggie and immediately gave it to Tucker. The baggie contained seven or eight individually wrapped packages of white and off-white substances.

Fresno Police Officer Pete Santellanos ("P. Santellanos") arrived to assist Tucker and provide Spanish translation if necessary. P. Santellano testified that after he arrived, he noticed defendant's pager was "constantly going off." He wrote down one of the telephone numbers that appeared on the pager and used his cellular telephone to return the call. A woman answered and asked for "Carlos." P. Santellano said that Carlos was busy and asked how much she needed. In response, "she said to take her forty." Based on his experience as a narcotics investigator, P. Santellano testified this meant that he deals a lot with Hispanic people and often finds "the correct name is not used, especially in narcotic transactions."

Fresno Police Officer Gary Beer helped book the evidence seized. According to Beer, the evidence consisted of $1,205 in cash, a Nokia cellular telephone, an NEC pager, four clear plastic baggies of apparent rock cocaine, and three clear plastic baggies of apparent powder cocaine. Criminalist Ricardo Deslate tested the substances. He confirmed the four plastic baggies contained cocaine base with a net weight of 5.63 grams, and the remaining three baggies contained powder cocaine with a net weight of 4.03 grams.

Fresno Police Officer Keith Kobashi worked in the narcotics unit and was responsible for evaluating whether property and drugs seized in investigations should be released or destroyed. Kobashi testified that in May 1999 he received a "dispositional sheet" from the County of Fresno. He described it as a court document signed by a judge and deputy district attorney, requesting him to evaluate the evidence seized. According to Kobashi, the dispositional sheet named only one defendant, Jaime C., and indicated that his case had been adjudicated or finalized. There was no mention of any co-defendants. After reviewing the

dispositional sheet, Kobashi authorized the destruction of the rock and powder cocaine and return of the pager and cellular telephone to Jaime C. The cocaine was destroyed in an incendiary plant before defendant's case went to trial.

James Barnard, a narcotics investigator for the Fresno Police Department, testified as an expert witness on the possession and sale of cocaine. According to Barnard, 5.63 grams of cocaine base represented approximately 28 individual $20 rocks with a total street value of $550. Barnard explained that a $20 rock would have a net weight of two-tenths of a gram, and would be around the same size as a half or quarter of a marble. At defense counsel's request, Barnard also compared a $20 rock to a tack on a bulletin board in the courtroom: "Cut that tack in about half to a third, and you would have a $20 rock."

Barnard further testified that 4.03 grams of powder cocaine would have a street value of approximately $250. Barnard explained that one gram of powder cocaine would physically resemble "a small package of like Sweet'n Low or things of sugar at a coffee shop."

**Defense**

Juan Esparza, Jaime C's uncle, testified that he met defendant about seven months prior to his arrest. Esparza and defendant lived near one another, and defendant drove Esparza to work all the time. Esparza explained that he and defendant did field work at Lagoluso Farms in Madera. According to Esparza, friends at work referred to defendant by the nicknames "El Gordo" and "Theodoro." Esparza indicated that he and defendant were consistently employed at Lagoluso Farms from November 1998 to March 1999. They earned $40 to $80 per day and were paid by check once a week.

**Rebuttal**

Barnard testified that the fact a defendant was employed would have no bearing on his opinion regarding whether that individual was engaged in selling drugs. In his experience, employed drug dealers often sold drugs during their breaks or on their days off.

See pp. 2-5, Exhibit C, Answer.

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

1  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114
2  F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert.*
3  *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997)
4  (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was
5  filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412.  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claims**

    **A.  Ground One:** **"The destruction of exculpatory evidence was a violation of petitioner['s] constitutional rights to Due Process and Fundamental Fairness under the United States Constitution."**

In his first ground for relief, Petitioner claims the destruction of the narcotics seized from Petitioner's passenger, Jaime C., deprived him of his constitutional rights. He alleges the destruction impeded his ability to exonerate himself by demonstrating that the drugs seized were of such a small size as to be nearly unobservable. He claims that had the drugs been available at trial, he would have been able to demonstrate a reasonable doubt as to the knowledge element required for the offenses of

1  possession and transportation of narcotics.

2      This claim was first presented on direct appeal to the 5th DCA. The 5th DCA denied the claim
3  on May 1, 2002, in a reasoned opinion. <u>See</u> Exhibit C, Answer. The claim was then presented to the
4  California Supreme Court in a petition for review; however, the petition was summarily denied on
5  July 17, 2002. <u>See</u> Exhibit F, Answer. The California Supreme Court, by its "silent order" denying
6  review of the 5th DCA's decision, is presumed to have denied the claims presented for the same
7  reasons stated in the opinion of the 5th DCA. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

8      In rejecting Petitioner's claim, the 5th DCA found the destruction of the evidence did not
9  violate due process. The 5th DCA cited clearly established federal law as determined by the Supreme
10 Court in <u>California v. Trombetta</u>, 467 U.S. 479 (1984):

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality [citation], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

<u>See</u> Exhibit C, Answer.

    The appellate court assumed the cocaine possessed exculpatory value; however, the court found no violation of due process because Petitioner was able to obtain comparable evidence. Petitioner argues the destruction of evidence caused him to be unable to demonstrate his theory that the drugs were so small that he was unaware of their presence in Jaime C.'s pocket. The appellate court noted that Petitioner was able to demonstrate the size of the drugs through the testimony of an expert witness. As discussed in the statement of facts, the officer who conducted a search found 4.03 grams of powder cocaine. Narcotics investigator James Barnard testified that a gram of powder cocaine was about the size of a packet of sugar or "Sweet'n Low" from a coffee shop. Also found in the pocket of Jaime C. was 5.63 grams of cocaine base which could be translated into 28 individual rocks of cocaine valued at $20 each. Barnard testified that each rock of cocaine would weigh approximately two-tenths of a gram, and would be around the same size as a half or quarter of a marble. In response to defense counsel's questions, Barnard compared a $20 rock to a tack on a bulletin board in the courtroom: "Cut that tack in about half to a third, and you would have a $20

rock." In addition, as noted by the appellate court, Officer C. Santellano testified that Jaime C. was wearing extremely baggy jeans and that she could only detect the presence of the narcotics after looking directly into his pocket while he was standing up. The 5th DCA concluded that it was not necessary for the jury to actually see the cocaine to understand Petitioner's defense theory that he lacked knowledge of the cocaine's presence due to the small size.

In addition, citing <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the court noted that Petitioner's due process rights were not violated because Petitioner did not demonstrate bad faith on the part of the police in destroying the evidence. The 5th DCA noted the trial court expressly found that Officer Kobashi, although careless, did not intentionally or maliciously destroy the evidence.

Based on the foregoing, the appellate court's rejection of Petitioner's claim was not unreasonable. The Supreme Court has held that when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld. See <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); <u>United States v. Agurs</u>, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In contrast, the Supreme Court in <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), recognized that the Due Process Clause "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." The Supreme Court concluded that the failure to preserve this "potentially useful evidence" does not violate due process "unless a criminal defendant can show bad faith on the part of the police." <u>Id</u>., at 58. Also, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." <u>Trombetta</u>, 467 U.S. 479 (1984).

The cocaine powder and rocks seized from Jaime C. were plainly the sort of "potentially useful evidence" referred to in <u>Youngblood</u>, not the material exculpatory evidence addressed in <u>Brady</u> and <u>Agurs</u>. Having the actual cocaine at trial would not have furthered Petitioner's defense theory. It is undisputed that the material seized by Officer C. Santellano and tested by Criminalist

DeSlate was cocaine. The testimonial evidence provided by Barnard and C. Santellano fully detailed the size of the cocaine and the obscure location where it was concealed. Thus, Petitioner's contention that the cocaine's actual presence at trial would have exonerated him is pure speculation. Moreover, there is no evidence that Officer Kobashi acted in bad faith, and Petitioner does not contend that he did. The trial court stated that Kobashi's actions were "inadvertent" and "non-malicious." (RT² 99.) At most, Kobashi acted carelessly and negligently. Therefore, under both Trombetta and Youngblood, Petitioner has failed to establish a due process violation.

Accordingly, the rejection of this claim by the state courts was neither contrary to or an unreasonable application of clearly established Federal law, nor an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim must be denied.

**B. Ground Two:** "The Trial [Court's] jury instruction on CALJIC 17.41.1, creates an improper chilling effect on juror deliberations by allowing unac[c]eptable judicial involvement which assists the majority jurors in imposing their will upon the minority, impermissibly infringes on the power of jury nullification, and denies the petitioner the rights to juror unanimity and a fair trial by jury."

In his second ground for relief, Petitioner claims the instruction on CALJIC 17.41.1³ given by the trial court created an improper chilling effect on juror deliberations, allowed the court to improperly assist the majority to impose their will upon the minority juror(s), denied Petitioner the right to juror unanimity and fair trial, and impermissibly infringed on the power of juror nullification.

This claim was also first presented on direct appeal to the 5th DCA and denied on May 1, 2002. The claim was then presented to the California Supreme Court in a petition for review and summarily denied on July 17, 2002. The California Supreme Court, by its "silent order" denying review of the 5th DCA's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the 5th DCA. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting this claim, the 5th DCA found Petitioner had not demonstrated any prejudice

---

²"RT" refers to the Reporter's Transcript lodged with the Court.

³CALJIC 17.41.1, as given by the trial court, provides:
The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

caused by the giving of this instruction: "There was no report of a juror refusing to deliberate or disregarding the law. There was no jury deadlock and no holdout juror. In short, there is no reason to believe the court's use of CALJIC 17.41.1 played any role in the jury's deliberations." See Exhibit C, Answer.

As with Petitioner's first claim, the state court's rejection of this claim was not unreasonable. The Court notes first that Respondent's contention that Petitioner has failed to raise a cognizable federal claim is persuasive. Petitioner does not allege a violation of the Constitution or federal law, nor does he argue that he is in custody in violation of the Constitution or federal law. Petitioner does not allege that the adjudication of his claims in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, . . . or resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254. The claim is framed as a violation of state law, and generally, issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"); Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995) (Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable claim). In addition, "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239 (1990), *quoting,* Dugger v. Adams, 489 U.S. 401, 409 (1989).

In addition, as found by the appellate court, there is nothing in the record which supports Petitioner's allegation. Aside from Petitioner's own speculative assertions, there is no evidence that deliberations were improperly chilled, that majority jurors improperly imposed their will on the minority, or that Petitioner was denied his right to a unanimous jury and fair trial. Therefore, Petitioner has failed to demonstrate any prejudice resulting from this instruction.

Moreover, Petitioner has failed to establish a federal constitutional violation. The Supreme Court has not held this instruction to be unconstitutional, and Petitioner does not point to any

1  Supreme Court authority which would bar the giving of this instruction.  The claim is foreclosed by
2  <u>Brewer v. Hall</u>, 378 F.3d 952, 957 (9th Cir.2004), which affirmed a district court's denial of the same
3  claim because there is no clearly established federal law holding that CALJIC 17.41.1 violates an
4  existing constitutional right.
5      Accordingly, the rejection of this claim by the state courts was neither contrary to or an
6  unreasonable application of clearly established Federal law, nor an unreasonable determination of the
7  facts in light of the evidence presented, and so it must be denied. <u>See</u> 28 U.S.C. § 2254(d).

**ORDER**

9      Accordingly, IT IS HEREBY ORDERED that the petition for writ of habeas corpus is
10  DENIED and the Clerk of Court is DIRECTED to enter judgment for Respondent.
11  IT IS SO ORDERED.

12  **Dated:    December 8, 2005**          /s/ Lawrence J. O'Neill
    b9ed48                                 UNITED STATES MAGISTRATE JUDGE